# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Civil Action No. 4:19-cr-00285-ALM-AGD |
| | § | |
| EDDIE BRAVO-ESCALERA | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion for Compassionate Release pursuant to § 3582(c)(1)(A)(i) (Dkt. #128) and Supplement to Defendant's Motion for a Two-Level Reduction (Dkt. #129). Having considered the Motion, the Supplement, and the relevant pleadings, the Court finds that the Motion should be **DENIED**.

## BACKGROUND

Near midnight on November 6, 2019, Eddie Bravo-Escalera ("Defendant") and Isaac Delarosa were pulled over by a Rockwall County, Texas, detective (Dkt. #65 at pp. 3–4). The detective observed Defendant driving at an unsafe distance (about 15 feet) behind a tractor-trailer (Dkt. #65 at pp. 3–4). After pulling the vehicle over, the detective requested and received consent to search the vehicle (Dkt. #65 at pp. 3–4). The detective, along with a drug-detecting dog, discovered about 6.5 kilograms of cocaine in the right rear fender well of the vehicle (Dkt. #65 at pp. 3–4). Defendant and Delarosa were subsequently arrested in the early morning hours of November 7, 2019 (Dkt. #65 at pp. 3–4).

On November 7, 2019, a criminal complaint was filed against Defendant and Delarosa, charging them with Conspiracy to Possess with Intent to Distribute Cocaine (Dkt. #65 at p. 3). On November 13, 2019, a Federal Grand Jury in the Eastern District of Texas, Sherman Division,

returned a one-count Indictment against Defendant and Delarosa, charging them with Possession with Intent to Manufacture and Distribute 5 Kilograms or More of Cocaine in violation of 21 U.S.C. § 846 (Dkt. #65 at p. 3). Then, on June 16, 2020, Defendant appeared with counsel before United States Magistrate Judge Christine A. Nowak and pleaded guilty to the one-count Indictment, pursuant to a non-binding Plea Agreement (Dkt. #65 at p. 3). On September 29, 2020, the Court sentenced Defendant to 120 months in prison and supervised release of five years (Dkt. #68 at p. 2–3). Finally, on March 18, 2024, Defendant filed this Motion for Compassionate Release, asserting that "extraordinary and compelling reasons" justify early release (Dkt. #128 at p. 1).

## LEGAL STANDARD

### I.     18 U.S.C. § 3582(c)(1)(A)

A judgment of conviction imposing a sentence of imprisonment "'constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)). "Often referred to as 'compassionate release,' § 3582(c)(1)(A) embodies a rare exception to a conviction's finality." *United States v. Wilson*, No. 1:07-CR-236-MAC-CLS-1, 2024 WL 4267923, at *3 (E.D. Tex. Sept. 23, 2024). The statute gives the Court discretion, under certain circumstances, to reduce a defendant's term of imprisonment. *Id.* The First Step Act of 2018, in part, states:

(A)     the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i)     extraordinary and compelling reasons warrant such a reduction; or

(ii)    the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Pub. L. No. 115-391, 132 Stat. 5194, codified as 18 U.S.C. §3582(c)(1)(A).[1]

Instead of defining "extraordinary and compelling reasons," Congress delegated its authority to the United States Sentencing Commission ("Commission") to define the term. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *see also Wilson*, 2024 WL 4267923, at *3 (collecting cases); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024). "Although the Commission issued a policy statement prior to the passage of the [First Step Act] that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the [Bureau of Prisons]" *Wilson*, 2024 WL 4267923, at *3. Accordingly, the Fifth Circuit held that the policy statement was inapplicable to motions filed by defendants on their own behalf. *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021).

This changed on November 1, 2023, when the amendments to the United States Sentencing Guidelines ("Guidelines") became effective. The Commission amended the

---

[1]  This provision is often referred to as "compassionate release." *See Wilson*, 2024 WL 4267923, at *3 (citing *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023)).

Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release. *Wilson*, 2024 WL 4267923, at *4 (citing U.S.S.G. § 1B1.13). Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling." U.S.S.G. § 1B1.13(b). The categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the family circumstances of the defendant; (4) whether the defendant was a victim of abuse while in custody; (5) other reasons similar in gravity to those previously described; and (6) an unusually long sentence. *Id.* § 1B1.13(b)(1)–(6). Notably, rehabilitation alone is insufficient to grant a defendant's motion for compassionate release. *Jean*, 108 F.4th at 279.

## II.    Exhaustion of Administrative Remedies

Section 3582(c)(1)(A) states that the Court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. *Wilson*, 2024 WL 4267923, at *4 (citing 18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020)).[2] That is, a defendant may not seek relief from a court before first exhausting each administrative avenue available to the defendant. *See Wilson*, 2024 WL 4267923, at *4. "Accordingly, before seeking relief from the [C]ourt, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust

---

[2]  The exhaustion requirement applies whether the motion is styled as one for compassionate release or merely for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). *Wilson*, 2024 WL 4267923, at *4.

his administrative remedies or wait for the lapse of 30 days after the warden received the request." *Id.* (citing 18 U.S.C. § 3582(c)(1)(A)).

This exhaustion requirement is a "mandatory claim-processing rule," which means a defendant may not waive it himself. *Franco*, 973 F.3d at 468; *see also United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) ("Because the statutory language is mandatory . . . we must enforce this procedural rule"). However, that is not to say the exhaustion requirement can never be waived. Section 3582(c)'s exhaustion requirement is a claim-processing rule—not a jurisdictional prerequisite. *Ward v. United States*, 11 F.4th 354, 361 (5th Cir. 2021). Thus, like other claim-processing rules, "the Government must properly raise the rule before it will be enforced." *Id.* (cleaned up); *see also Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (cleaned up and citations omitted) ("A claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party properly raises it . . . But an objection based on a mandatory claim-processing rule may be forfeited if the party asserting the rule waits too long to raise the point."). In turn, if the Government does not invoke the exhaustion requirement, the Court will deem the matter waived for the purposes of a defendant's motion under § 3582(c)(1)(A). *See Ward*, 11 F.4th at 361; *see also United States v. McLean*, No. 21-40015, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022) (finding abuse of discretion where the failure to exhaust administrative remedies was raised *sua sponte*).

## III.    U.S.S.G.'s Policy Statement

### A.    Defendant's medical circumstances (U.S.S.G. § 1B1.13(b)(1))

The Sentencing Commission has enumerated four separate medical circumstances to consider in evaluating a compassionate release request. U.S.S.G. § 1B1.13(b)(1)(A)–(D).

First, whether the Defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory)." *Id.* § 1B1.13(b)(1)(A). Although a life-expectancy prognosis is not required, the provided examples make clear how serious the illness must be: "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* Fifth Circuit precedent is in accord. *See, e.g.*, *United States v. McMaryion,* No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam) ("We have said that a late-stage, terminal prognosis can constitute an extraordinary and compelling basis for a § 3582(c)(1) motion."). Generic conditions like hypertension or high cholesterol are insufficient. *See, e.g.*, *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) (finding neither hypertension nor high cholesterol to be terminal conditions); *United States v. Koons*, 455 F.Supp.3d 285, 291–92 (W.D. La. 2020) (similar, but for high cholesterol, hypertension, and acid reflux).

Second, whether the defendant is "(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process." U.S.S.G. § 1B1.13(b)(1)(B). This condition must be so severe that it "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* When the defendant's conditions are "'managed effectively by medication' and do not 'substantially diminish the ability of the defendant to provide self-care,'" the defendant's medical condition is not an "extraordinary and compelling reason[] warranting compassionate release . . . ." *United States v. Love*, 853 F.App'x 986, 987 (5th Cir. 2021) (quotations omitted).

Third, whether the Defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). This subcategory focuses on the lack of resources and medical care available in some correctional facilities. Courts have found insufficient general complaints about long-term issues without medical proof of the condition or how it is deteriorating. *See, e.g.*, *United States v. Ani*, No. 21-00147, 2024 WL 50775, at *4 (D. Haw. Jan. 4, 2024) ("BOP is providing him with medical care, such as medication. There is no evidence that his medical conditions are deteriorating; that his medical conditions require long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or death; or that his ability to care for himself has been seriously diminished."); *United States v. Dessure-Outlaw*, No. CR 122-023, 2024 WL 83327, at *2 (S.D. Ga. Jan. 8, 2024) (finding general complaints about surgery complication and diabetes insufficient).

Fourth, whether the defendant is in a facility that is "at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority." U.S.S.G. § 1B1.13(b)(1)(D)(i). In addition, the defendant's "personal health risk factors and custodial status" must put them "at increased risk of suffering severe medical complications or death . . . ." *Id.* § 1B1.13(b)(1)(D)(ii). The facility must also be unable to "adequately mitigate[]" the defendant's increased risk "in a timely manner." *Id.* § 1B1.13(b)(1)(D)(iii).

Courts have repeatedly denied motions related to the COVID-19 pandemic under this section.[3] In fact, the Fifth Circuit has "repeatedly denied relief in cases where prisoners sought compassionate release due to fear of communicable disease, even when those prisoners were in poor health." *McMaryion*, 2023 WL 4118015, at *2 (citing *Thompson*, 984 F.3d at 432–34 (5th Cir. 2021) (denying relief to a hypertensive stroke survivor concerned by COVID-19)); *see also United States v. Rodriguez*, 27 F.4th 1097, 1098–1101 (5th Cir. 2022) (denying relief where movant fearing COVID-19 suffered from heart failure). Indeed, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also Koons*, 455 F.Supp.3d at 290) ("[A] prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP . . . .").

Further, the increased risk from an outbreak or emergency must exist at the time relief would be granted. The Sentencing Commission drafted this section using words that convey the necessary, continuous nature of the risk—"at imminent risk of being affected," "ongoing outbreak," "ongoing public health emergency," and "increased risk of suffering." U.S.S.G. § 1B1.13(b)(1)(D). As applied to COVID-19, this is no longer the case: both international and

---

[3]  *See, e.g.*, *United States v. Blair*, No. 5:19-CR-50058, 2023 WL 8223470, at *3 (W.D. Ark. Nov. 6, 2023) (finding the mere risk of COVID-19 infection was too speculative to serve as an extraordinary and compelling medical circumstance); *United States v. Williams*, No. GLR-97-355, 2023 WL 8019023, at *4 (D. M.D. Nov. 20, 2023) ("Hypertension and high BMI were not sufficient to warrant a prisoner's relief when the BOP facility's COVID-19 numbers were low, and the inmate did not show that he would not receive appropriate treatment if he were to contract the virus.").

domestic health authorities, including the World Health Organization,[4] the United States Centers for Disease Control and Prevention,[5] and the U.S. Federal Government,[6] have made clear that the COVID-19 pandemic has ended.[7] Thus, the COVID-19 pandemic no longer constitutes an "extraordinary and compelling reason" for compassionate release.

### B.    Defendant's age (U.S.S.G. § 1B1.13(b)(2))

There are three requirements for the defendant's age to constitute an extraordinary and compelling reason for release. First, the defendant must be "at least 65 years old." U.S.S.G. § 1B1.13(b)(2). Second, they must be "experiencing a serious deterioration in physical or mental health because of the aging process." *Id.* Third, the defendant must have "served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.*

### C.    Defendant's family circumstances (U.S.S.G. § 1B1.13(b)(3))

The Sentencing Commission enumerates four potential reasons for a defendant's family circumstances to constitute an extraordinary and compelling reason for release:

> (A)    The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

---

[4]    *Statement on the Fifteenth Meeting of the IHR (2005) Emergency Committee on the COVID-19 Pandemic*, WORLD HEALTH ORG. (May 5, 2023), https://www.who.int/news/item/05-05-2023-statement-on-the-fifteenth-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-coronavirus-disease-(covid-19)-pandemic [https://perma.cc/MR64-X7UV].

[5]    End of the Federal COVID-19 Public Health Emergency (PHE) Declaration, Ctrs. for Disease Control & Prevention (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=The%20federal%20COVID-19%20PHE,share%20certain%20data%20will%20change [https://perma.cc/3S43-2VNT].

[6]    *See* National Emergencies Act, PL 118-3, April 10, 2023, 137 Stat 6.

[7]    *See also United States v. Ford*, No. 1:16-CR-19, 2023 WL 3477168, at *5 (N.D. Ind. May 15, 2023) (noting that "on May 11, 2023, the federal government ended the COVID-19 Public Health Emergency based on widespread prevention and control measures like vaccination") (quotations omitted).

(B)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C)    The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D)    The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "*immediate family member*" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3)(A)–(D).

Conclusory assertions that the defendant must now serve as the primary caretaker for a family member are insufficient. *See, e.g.*, *United States v. Newman*, No. CR 122-031, 2024 WL 812041, at *2 (S.D. Ga. Feb. 27, 2024) (finding unsupported assertions that defendant's wife was disabled and that his father required caretaking were "conclusory statements" that were "insufficient to carry his burden of persuasion"). Rather, courts require specific evidence of the defendant's need to serve as a primary caretaker. For example, the defendant must prove with medical support that the family member is incapacitated. *See United States v. Zermeno*, No. 1:16-CR-79(1), 2024 WL 4043445, at *4 (E.D. Tex. Sept. 3, 2024) (collecting cases); *United States v. Romano*, 707 F.Supp.3d 233, 237–38 (E.D.N.Y. 2023) (finding that "[w]ithout medical evidence" of the "father's incapacitation and medical evidence detailing [defendant's] mother's inability to provide his father the necessary assistance, the Court cannot conclude that [the mother] would be an inadequate caregiver."). Statements that a family member is elderly and needs care are insufficient. *Id.* The defendant must also demonstrate why they are the only available caregiver for that family member. *United States v. Lopez,* No. 23-50404, 2024 WL 244935, at *1 (5th Cir. Jan.

23, 2024) (noting that the defendant "failed to explain why his other siblings could not care for his parents"). There must be a reason for the change in that family member's caretaker status. *Id.* (noting the defendant's failure to "allege the death or incapacitation of any current caretaker").

When the caretaking role relates to minors like children, additional requirements apply. For instance, the defendant must show that they would likely gain custody of the child if released. *See, e.g.*, *Zermeno*, 2024 WL 4043445, at *5 (collecting cases). In such a situation, the court should evaluate whether "release of the inmate to care for the inmate's child is the best interest of the child." U.S. Dep't of Just., Fed. Bureau of Prisons, Program Statement 5050.50 (Jan. 17, 2019)).

### D.    Victim of abuse (U.S.S.G. § 1B1.13(b)(4))

Under this section, the defendant must establish that, while in custody, they were a victim of (1) "sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2)"; or (2) "physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to §1B1.1." U.S.S.G. § 1B1.13(b)(4)(A)–(B). The abuse must have been inflicted by either a correctional officer, employee, or contractor of the BOP, or "any other individual who had custody or control over the defendant." *Id.* § 1B1.13(b)(4). Finally, the alleged misconduct "must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding . . . ." *Id.* But if such proceedings are unduly delayed or the defendant faces imminent danger, a formal adjudication is unnecessary. *Id.*

### E.    Other reasons (U.S.S.G. § 1B1.13(b)(5))

The "other reasons" category is a catchall that allows the defendant to "present[] any other circumstance or combination of circumstances" that is "similar in gravity to" the four extraordinary and compelling reasons described in U.S.S.G. § 1B1.13(b)(1)–(4). *Id.* § 1B1.13(b)(5). Although some courts invoked this provision to grant COVID-19-related compassionate release

motions, this reasoning no longer applies because the pandemic is over. *See supra* notes 4–7 and accompanying text.

### F.    Unusually long sentences (U.S.S.G. § 1B1.13(b)(6))

A defendant must meet three requirements under this section. First, the defendant must be serving an unusually long sentence. *See* U.S.S.G. § 1B1.13(b)(6). Second, they must have served at least ten years of that sentence. *Id.* Third, there must have been a change in law that "produce[s] a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *Id.* This section explicitly excludes non-retroactive changes "to the Guidelines Manual." *Id.* And Fifth Circuit precedent precludes considering non-retroactive changes in *any* law. *United States v. Austin*, No. 24-30039, 2025 WL 78706, at *3 (5th Cir. Jan. 13, 2024) ("A non-retroactive change in the law cannot constitute an extraordinary and compelling reason justifying sentence reduction under § 3582(c)(1)."). Thus, in this circuit, non-retroactive changes are irrelevant.

## IV.    The 18 U.S.C. § 3553(a) Factors

Section 3553(a) directs courts to consider the following factors: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among

similar defendants; and the need to provide restitution to the victim. *Wilson*, 2024 WL 4267923, at *3 n.7 (citing 18 U.S.C. § 3553(a)).

Importantly, the district court has broad discretion in considering these factors. As the Supreme Court has explained, "the 'sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case . . . .'" *United States v. Rollins*, 53 F.4th 353, 359 (5th Cir. 2022) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Consistent with the broad discretion granted district courts, the Fifth Circuit has "regularly affirmed the denial of a compassionate-release motion . . . where the district court's weighing of the Section 3553(a) factors can independently support its judgment." *Id.* at 358 (citation omitted). In short, "compassionate release is discretionary, not mandatory, and could be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).

## V.     The Defendant's Burden

In sum, when seeking compassionate release on their own motion, the defendant must demonstrate that: (1) the defendant exhausted administrative remedies; (2) "extraordinary and compelling reasons" justify the defendant's sentence reduction or the defendant satisfies the requirements of § 3582(c)(1)(A)(ii);[8] (3) the reduction is consistent with the policy statement of U.S.S.G. § 1B1.13; and (4) the court should exercise its discretion to grant the motion after considering the § 3553(a) factors. *Wilson*, 2024 WL 4267923, at *4 (citing *United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022); *Shkambi*, 993 F.3d at 392; *United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022)).

---

[8]   18 U.S.C. § 3582(c)(1)(A)(ii) states that "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)."

## ANALYSIS

### I.  Defendant has satisfied the exhaustion requirements outlined in § 3582(c)(1)(A).

A defendant is not entitled to seek relief from the court, nor should the court grant a motion for compassionate release, unless the defendant has satisfied the administrative exhaustion requirement. *Wilson*, 2024 WL 4267923, at *4. Defendants may not waive the exhaustion requirement themselves because it is a "mandatory claim processing rule." *Franco*, 973 F.3d at 468. However, the claim-processing rule is not a jurisdictional prerequisite. If the defendant fails to exhaust administrative remedies and the government does not timely and properly assert the exhaustion requirement, the court will deem it waived. *Ward*, 11 F.4th at 361.

Here, Defendant has exhausted the administrative remedies made available to him by submitting an "Inmate Request for Compassionate Release Form" ("CRF") (Dkt. #128 at p. 35). Through it, Defendant requested compassionate release due to the Incapacitation of a Spouse or Registered Partner in which he is the only available caretaker (Dkt. #128 at p. 35). When asked to elaborate, Defendant mentioned his own health, family issues, disparity of sentence, and "other reasons" (Dkt. #128 at p. 35). Defendant was further prompted to provide his intended residence and phone number, examples of family support, plans for covering medical and living expenses, and the location for ongoing health treatment (Dkt. #128 at p. 35). Defendant did not address any of these questions (Dkt. #128 at p. 35).

Defendant's CRF was denied six days after it was submitted (Dkt. #128 at p. 36). Although the BOP denied Defendant's CRF, Defendant has fulfilled the initial requirement of exhausting administrative remedies before filing a motion with the Court. However, as the following discussion will demonstrate, Defendant has failed to show extraordinary and compelling reasons justifying his release.

14

II.    **Defendant has not met the § 3582(c)(1)(A) requirement that "extraordinary and compelling reasons" warrant compassionate release.**

Turning to Defendant's motion, Defendant claims that he is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A) "because he can show extraordinary and compelling reasons to warrant a sentence reduction" (Dkt. #128 at p. 7). Defendant raises five arguments in support of his request: (1) the ongoing impact of COVID-19; (2) the need to care for his mother; (3) eligibility under the First Step Act ("FSA") and miscalculation of earned time credits ("ETCs"); (4) his status as a victim of abuse; and (5) a two-level reduction in status points (Dkt. #128 at pp. 9–32). The Court will address each of these arguments in turn, beginning with COVID-19.

### A. COVID-19 is not an extraordinary and compelling reason to justify granting a motion for compassionate release.

The court begins by addressing Defendant's COVID-19 argument. Defendant discusses COVID-19 simultaneously with a discussion of habeas corpus standing (Dkt. #128 at p. 14). Defendant invokes language from *Susan B. Anthony List* to establish standing under the imminence doctrine. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (noting that an injury sufficient to satisfy Article III must be "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical'"). Defendant argues that the imminent threat posed by COVID-19 presents a substantial risk of harm, thereby constituting an injury-in-fact (Dkt. #128 at p. 14). This, Defendant contends, is sufficient to establish standing "even when there are no confirmed cases of the COVID-19 virus" (Dkt. #128 at p. 14).

The Court need not address habeas corpus standing. Defendant is correct that the "traditional function of the writ of habeas corpus is to secure a release from custody." *United States v. Kirkpatrick*, No. 1:96-CR-81, 2009 WL 2823658 (E.D. Tenn. Aug. 28, 2009).

Defendant's standing is based on his incarcerated status irrespective of COVID-19. *Id.* Because standing is not an issue, the task at hand is to determine whether COVID-19 is an extraordinary and compelling reason for compassionate release.

Defendant offers several arguments in support of his claim that COVID-19 is an extraordinary and compelling reason for compassionate release (Dkt. #128 at pp. 9–18). Defendant's claims can be summarized into three categories: (1) the imminent threat of COVID-19; (2) insufficient anticipation of harsh conditions by pre-pandemic courts; and (3) general statistics regarding COVID-19 itself, the vaccine, and the credentials of the FCI Loretto medical staff (Dkt. #128 at pp. 9–18). The Court addresses each category individually.

### 1.    The Imminent Threat of COVID-19

The Court begins with the general threat of COVID-19. Defendant cannot claim to be under imminent threat of COVID-19 based on the mere possibility of contracting COVID-19. *See McMaryion*, 2023 WL 4118015, at *2 (holding that "it is the actuality, not the risk, of terminal illness that makes a prisoner's circumstances extraordinary"). Language in U.S.S.G. § 1B1.13 such as, "at imminent risk of being affected," "ongoing outbreak," and "public health emergency" is evidence of legislative intent that the risk of a COVID-19 outbreak cannot be merely possible or probable, but rather the risk must exist at the time requested relief would be granted. U.S.S.G. § 1B1.13(b)(1)(D). Additionally, both the World Health Organization, the United States Centers for Disease Control and Prevention, and the U.S. Federal Government, have declared that the COVID-19 pandemic is over. *See supra* Section III.A. Therefore, COVID-19 does not pose a current imminent threat to Defendant.

2.    Insufficient Anticipation of Harsh Conditions by Pre-Pandemic Courts

Next, the Court considers whether anticipation—or lack thereof—by pre-pandemic courts of comparatively harsh conditions in prisons caused by COVID-19 is an extraordinary and compelling circumstance. Defendant offers eight cases in support of his claim that insufficient anticipation creates extraordinary and compelling circumstances (Dkt. # 128 at p. 14). However, six of the eight cases were decided in 2022 and predate the World Health Organization and the United States Federal Government declaring the pandemic over in May of 2023 (Dkt. # 128 at p. 14). The remaining two cases (*Martinez* and *Tellier*) were decided in July of 2023 and August of 2023, respectively. *United States v. Martinez-Rojas*, No. 15-CR-348 (ERK), 2023 WL 4867433 (E.D.N.Y. July 31, 2023); *United States v. Tellier*, No. 92 CR. 869 (LGS), 2023 WL 5498909 (S.D.N.Y. Aug. 25, 2023). In both *Martinez* and *Tellier*, the court granted a reduction in sentence. *Martinez*, 2023 WL 4867433; *Tellier*, 2023 WL 5498909. However, the reduction in *Tellier* was based on the defendant's age (63) and his chronic heart condition. *Tellier*, 2023 WL 5498909, at *4. Additionally, the sentence reduction in *Martinez* was the result of an improper original sentence, as the court failed to account for time the defendant had already served in custody. *Martinez-Rojas*, 2023 WL 4867433, at *5. While the court acknowledged that COVID-19 conditions can create unanticipated harsh circumstances, the reduction was ultimately based on crediting the defendant with time that was owed to him (time served). *Id*. Thus, those cases are distinguishable from the facts here.

The court in *Colon* ruled on a nearly parallel claim of insufficient anticipation. *United States v. Colon*, No. 09-CR-294, 2021 WL 389144 (D. Conn. Feb. 4, 2021). There, the defendant claimed that the comparatively harsh confinement conditions stemming from the COVID-19 pandemic were not anticipated by the court when he was sentenced. *Id*. at 7. The court conceded that while

17

it may be true that courts did not anticipate the effects of COVID-19, lack of anticipation does not justify early departure. *Id*. The court also addressed the living conditions during COVID-19 while incarcerated, noting that "[l]iving conditions during the pandemic are certainly difficult but this is a sentiment experienced by most of the population, whether incarcerated or not." *Id*. The Court concludes the same here. Lack of anticipation does not warrant compassionate release. Furthermore, Defendant's difficult living conditions, though distinct to him, reflect challenges commonly faced by the broader public amid COVID-19.

### 3.    COVID-19 Statistics & Vaccine

Finally, the Court assesses Defendant's arguments concerning COVID-19 statistics and vaccination. In support of his claim, Defendant presents statistics on COVID-19 variants, raises concerns about discrimination based on vaccination status, questions the effectiveness and safety of boosters, and challenges the qualifications of the doctor and physician assistants at FCI Loretto (Dkt. #128 at pp. 13–14, 15, 17–18). But "[a] prisoner cannot satisfy his burden of proof by citing COVID-19 statistics and making generalized statements on conditions of confinement within the BOP or making sweeping allegations about a prison's ability or lack thereof to contain an outbreak." *Koons*, 455 F.Supp.3d at 290. Here, Defendant's statements are just that—generalized proclamations.

In support of his argument, Defendant relies on a quote from Senior U.S. District Judge Arthur J. Tarrow: "At the end of the day, district judges are not epidemiologists." *United States v. Sherrod*, No. 19-20139, 2021 WL 3473236, at *5 (E.D. Mich. Aug. 6, 2021). True, judges are not epidemiologists. But in *Sherrod*, the defendant fulfilled his burden of proof by showing extraordinary and compelling circumstances, allowing Judge Tarrow to render a decision in his favor. *Id*. at *13. Here, Defendant arbitrarily references COVID-19 statistics while making

pronouncements with no supporting authority (Dkt. #128 at pp. 13–14, 15, 17–18). That will not do. Thus, COVID-19 and its transmissibility are not extraordinary and compelling reasons justifying compassionate release.

**B.    Defendant's mother does not meet the legal standard outlined in U.S.S.G § 1B1.13(b)(3)(C) to establish that she requires Defendant as her caretaker.**

Next, Defendant claims that his mother's medical issues, and her alleged dependence on him as her primary caregiver, create extraordinary and compelling circumstances warranting relief (Dkt. #128 at p. 18). This extraordinary and compelling circumstance would fall under U.S.S.G. § 1B1.13(b)(3)(C) ("The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent."). For the Court to find that the incapacitation of the defendant's parent is an extraordinary and compelling circumstance, Defendant must present specific evidence that (1) the family member is incapacitated, and (2) the family member needs Defendant to serve as their primary caretaker. *See Zermeno*, 2024 WL 4043445, at *4. The Court addresses each prong in turn.

1.    Standard of Incapacitation Required

"One is incapacitated, whether due to injury or illness, when he is 'deprive[d] of capacity or natural power,' such that he is unable to provide self-care." *See Zermeno*, 2024 WL 4043445, at *4 (internal citations omitted). Defendant's mother is 55 and, according to Defendant, suffers from high blood pressure (hypertension), high cholesterol, gastritis, vitamin D deficiency, allergies, and depression (Dkt. #128 at p. 18).

Defendant dedicates extensive discussion to his mother's hypertension and high cholesterol, which, by the attention afforded them, appear to be the most significant conditions presented (Dkt. #128 at pp. 19–21). Nonetheless, they fall short of incapacitation. Gastritis, vitamin

D deficiency, and allergies are common conditions that do not render someone incapacitated. Finally, Defendant claims that his mother is suffering from depression because of the ailments listed above and Defendant's absence from her life. But "[s]ituational depression that is not due to a mental impairment is insufficient to establish a disability." *Jones v. Berryhill*, No. A-17-CV-623 AWA, 2018 WL 4355210, at *1, *5 (W.D. Tex. Sept. 12, 2018). Consequently, while the Court does sympathize with Defendant's mother, her ailments do not rise to the standard of incapacitation.

### 2.    The Need for a Caretaker

Although Defendant has not fulfilled the prerequisite showing that his mother is incapacitated, the Court will briefly address his claim that she depends on him for care to ensure that all claims are fully considered (Dkt. #128 at p. 19). Defendant bases his argument on the fact that his mother "lives alone and has no one else" (Dkt. #128 at p. 18). However, conclusory statements that the defendant must now serve as his mother's caretaker are insufficient. *See Newman*, 2024 WL 812041, at *2. Defendant has failed to demonstrate, as required by *Lopez*, why his mother lacks any other available caregivers. *Lopez*, 2024 WL 244935, at *1. Nor has Defendant explained why the family member who previously served as caretaker is no longer able to do so. *Id.* This omission is particularly significant, as it raises the question: if Defendant's mother truly needs a caretaker, no one else is available to care for her, and her medical conditions have remained unchanged, who has been providing her care up to this point? In sum, the ailments from which Defendant's mother suffers do not meet the standard for incapacitation and based on the information provided in Defendant's motion, he is not needed as her primary caretaker.

**C.    The denial of Earned Time Credits is not an extraordinary and compelling reason for compassionate release.**

Next, the Court considers whether denial of ETCs "due" to Defendant is an extraordinary and compelling reason for compassionate release. Defendant devotes a portion of his motion to disputing the amount of ETCs he believes he is owed (Dkt. #128 at pp. 21–22). ETCs are defined and governed by 18 U.S.C. § 3632(d)(4) and are implemented through 28 C.F.R. § 523.42. Incarcerated individuals that are FSA eligible can accumulate ETCs by participating in evidence-based recidivism reduction programs or productive activities. 18 U.S.C. § 3632(d)(4). Prisoners earn ten days of ETCs for every thirty days of successful participation in the programs. *Id.* Additionally, a prisoner classified by the BOP as minimum or low risk of recidivism will earn an additional five days of ETCs for every thirty days of successful participation in the programs. *Id.* ETCs can be applied toward early transfer to prerelease custody, such as home confinement or residential reentry centers, or to supervised release. *Id.*

Here, Defendant is eligible under the First Step Act, has been classified as minimum risk of recidivism, and, according to FCI Loretto and the BOP, has earned 280 days of ETCs (Dkt. #128 at p. 21). Defendant claims that he has been shorted 260 ETCs and, in reality, has accumulated 540 ETCs (Dkt. #128 at p. 22). Defendant exhausted his administrative remedies and filed a "request for administrative remedy" with the BOP regarding this discrepancy (Dkt. #128 at p. 55). A representative from the BOP rejected Defendant's request, stating that "ETCs are computer generated and not calculated or applied by staff at FCI Loretto" (Dkt. #128 at p. 56).

Whether the BOP owes Defendant ETCs is not for the Court to decide. ETCs are calculated by a computer and, therefore, are not a question of law for the Court to consider in this motion. In any event, the Ninth Circuit rejected a parallel claim in *United States v. Bryant*.

*See United States v. Bryant*, No. 2:06-cr-00234-GMN-GWF-1, 2023 WL 7703175 (D. Nev. Nov. 14, 2023). The Court finds the analysis and holding in *Bryant* both persuasive and applicable to the issues presented here. *Id*. Regardless of whether the BOP owes Defendant ETCs or not, the denial of ETCs is not an extraordinary and compelling reason for compassionate release. *Id*. at *4 n.2. (holding that "failure or denial or denial of the BOP to calculate time credits does not constitute an extraordinary or compelling reason justifying compassionate release.")

**D.    The abuse suffered by Defendant does not satisfy the legal standard set forth in U.S.S.G. § 1B1.13(b)(4) and therefore does not constitute extraordinary and compelling circumstances that would warrant compassionate release.**

Next, Defendant claims that while in custody, he has been sexually assaulted twice, (leading him to attempt suicide twice) and has been physically assaulted on "several occasions" (Dkt. #128 at p. 27). Defendant claims that these assaults are "all due to the fact that the Defendant is transgender" (Dkt. #128 at p. 27). Additionally, Defendant implies, through his choice of caselaw, that prison officials at FCI Loretto have failed to adequately protect him from harm, and their "deliberate indifference" to substantial risk of serious harm violates the Eighth Amendment (Dkt. #128 at p. 29 (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

Under the abuse section of his Motion, Defendant provides information about disorders with which he claims to have been diagnosed (Dkt. #128 at p. 27). These disorders include "alcohol use disorder, cannabis use disorder, stimulant related disorders, major depressive disorder, anxiety disorder, posttraumatic stress disorder, gender dysphoria, and nightmare disorder" (Dkt. #128 at p. 27). Defendant claims that these disorders have been "confirmed by various healthcare professionals between 2021 and 2023" (Dkt. #128 at p. 27). However, Defendant does not offer any documentation or authority to support these medical findings.

In summary, Defendant argues that the physical and sexual abuse he endured, his transgender status, FCI Loretto's failure to protect him based on that status, and the range of disorders from which he suffers constitute extraordinary and compelling reasons warranting his release (Dkt. #128 at p. 30). Although the Court recognizes and empathizes with the difficulties faced by Defendant, he misses the mark here. Indeed, as Defendant observes, "[v]ictim of abuse applies if a defendant has suffered sexual or physical abuse that was committed by, or at the direct of, a correctional officer, an employee or contractor of the BOP, or any other individual having custody or control over the defendant" (Dkt. #128 at p. 30). However, the instances of abuse that Defendant endured, while saddening and disheartening, do not create extraordinary and compelling circumstances warranting compassionate release. Defendant's motion fails to show that any instance of abuse occurred at the hands of a correctional officer, employee or contractor of the BOP, nor any other individual having custody or control over Defendant. Again, while the Court is not without sympathy for the hardships Defendant has experienced during his incarceration, it remains the Court's duty to apply the law—and Defendant has again failed to meet the legal standard required to support his release.

The additional claims regarding Defendant's transgender status and disorders do not carry weight in an inquiry to determine if abuse is an extraordinary and compelling reason for compassionate release. Instead, these claims would be properly raised under U.S.S.G. § 1B1.13(b)(1) (Defendant's medical circumstances). However, even if Defendant would have properly raised these claims under U.S.S.G. § 1B1.13(b)(1), the disorders from which Defendant claims to suffer fall far short of the standard required by U.S.S.G. § 1B1.13(b)(1) for medical

circumstances to constitute extraordinary and compelling circumstances for compassionate release.

### E.    Seeking a two-level reduction in status points under Amendment 821 is not an extraordinary and compelling reason for compassionate release.

Finally, Defendant asserts that he is eligible for a two-level "status point" reduction under Part A of Amendment 821. U.S.S.G. Supp. to App. C, Amendment 821; (Dkt. #128 at p. 25). "Status points" are points added to a defendant's criminal history score when they have committed an offense while under a criminal justice sentence for a prior offense. U.S.S.G. § 4A1.1(d). Status points are governed under § 4A1.1 of the United States Sentencing Guidelines ("USSG"). *Id*. Part A of Amendment 821 changes how status points are calculated under § 4A1.1 and allows those changes to be applied retroactively to eligible inmates. U.S.S.G. Supp. to App. C, Amendment 821. Prior to Amendment 821, two points were added if the defendant committed the offense while under any criminal justice sentence. After Amendment 821, no points are added if the defendant has six or fewer criminal history points. One point is added (in contrast to the previous two additional points) if the defendant has seven or more criminal history points.

Here, Defendant seeks retroactive relief in the form of a two-level reduction in status points under Amendment 821. Yet Defendant never received a two-level adjustment for status points pursuant to U.S.S.G. § 4A1.1(d) in the first place. Therefore, a two-level reduction is not warranted here. And even if it were, a motion for compassionate release is not the proper vehicle to request a status point adjustment. Instead, Defendant should raise that argument in a separate motion. Thus, Defendant's status point argument does not qualify as an extraordinary and compelling reason justifying compassionate release.

III.    **Defendant has not shown that the 18 U.S.C. § 3553(a) factors warrant compassionate release.**

Defendant has failed to prove that extraordinary and compelling circumstances warrant compassionate release. The Court's analysis could stop there, as extraordinary and compelling circumstances are a necessary component of a motion for compassionate release. However, to be sure, the Court briefly addresses the 18 U.S.C. § 3553(a) factors. When a court evaluates a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), it must consider the § 3553(a) sentencing factors to determine whether a reduced sentence is still appropriate considering the defendant's current circumstances. 18 U.S.C. § 3582(c)(1)(A). Here, the factors weigh against release.

Defendant admitted to involvement with a San Antonio drug trafficking operation and to distributing cocaine for about five years (Dkt. #65 at p. 4). The drug trafficking operation participated in the nationwide distribution of cocaine, utilizing semi-trucks and cars to run cocaine from Texas to New York and Illinois (Dkt. #65 at p. 4). Defendant admitted to running six to twelve kilograms of cocaine a week from San Antonio to Chicago or New York (Dkt. #65 at p. 4). Profits acquired through the cocaine transactions were sent to a stash house in San Antonio until they could be sent to a drug trafficker in Mexico (Dkt. #65 at p. 4).

Additionally, Defendant's relationship with the law is well seasoned. Since 2007, Defendant has been charged with driving while intoxicated three times, failure to identify a fugitive, and intent to give false information. Through bargaining, five additional charges against Defendant have been dismissed: (1) Possession of a controlled substance, (2) theft $50 - $500, (3) theft $50 - $500, (4) theft by check $20 - $100, and (5) harassment of a public servant (Dkt. #65 at pp. 9–10) While these charges have been dismissed, they underscore Defendant's ongoing bout

25

with the legal system. Defendant also faces a pending charge for driving with an expired license, following a prior conviction.

After considering the § 3553(a) factors, the Court finds that granting Defendant's request for compassionate release or a reduction in sentence would not reflect the seriousness of the offense, promote respect for the law, provide just punishment for his offense, nor deter similar criminal conduct or protect the public. Aside from a few narrow exceptions, "federal courts may not modify a term of imprisonment once it has been imposed." *Freeman v. United States*, 564 U.S. 522, 526 (2011) (citing 18 U.S.C. § 3582(c)). One of those narrow exceptions is compassionate release. For the Court to grant a defendant's motion for compassionate release, the defendant must exhaust administrative remedies, demonstrate that extraordinary and compelling reasons justify a sentence reduction, and show that the § 3553(a) factors support the Court's exercise of discretion in granting the motion. *See Wilson*, 2024 WL 4267923, at *4. Here, Defendant satisfied only the exhaustion requirement, failing to meet his burden to show extraordinary and compelling circumstances, and the § 3553(a) factors likewise do not support granting his motion for compassionate release.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion for Compassionate Release pursuant to § 3582(c)(1)(A)(i) (Dkt. #128) is hereby **DENIED**.

**IT IS SO ORDERED.**
**SIGNED this 12th day of June, 2025.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE